Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 9, 2004   Decided May 7, 2004

No. 03-7075

NATIONAL RAILROAD PASSENGER CORPORATION,
APPELLANT

v.

LEXINGTON INSURANCE COMPANY, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 01cv01815)

———

*William G. Ballaine* argued the cause and filed the briefs for appellant.

*Frederick J. Wilmer* argued the cause for appellees. With him on the brief was *Michael H. McConihe*.

Before: SENTELLE, TATEL and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

SENTELLE, *Circuit Judge*: This is an insurance-coverage suit the National Railroad Passenger Corporation, commonly known as "Amtrak," brought against several of its "excess liability" insurers. The case is in federal court because Amtrak is a federal corporation and the federal government owns more than one-half of its stock. 28 U.S.C. § 1349. Amtrak was held liable for and paid a personal injury judgment of $25 million. Amtrak's suit seeks reimbursement for much of this sum from the insurers who insured Amtrak for personal-injury liability in excess of $10 million. The sole policy under which Amtrak is attempting to recover in this action was in effect from 1997–1998. The insurers moved for summary judgment, primarily on the ground that the plain terms of the policy allocate Amtrak's claim not to the 1997–98 policy, but rather to a different, less generous excess liability policy in effect from 1996–1997. The district court held that Amtrak could not recover under the 1997–98 policy and therefore granted the insurers summary judgment. We agree with the district court, hold that Amtrak may not recover under the 1997–98 policy, and affirm the district court's judgment. We express no view on whether Amtrak is entitled to reimbursement under the 1996–97 policy.

## I.

Two sets of Amtrak's "excess liability" insurance policies lie at the core of this dispute. Both insured Amtrak against liability for personal-injury claims in excess of $10 million. The first set covered the policy period October 1, 1996, through September 30, 1997; the second covered the period October 1, 1997, through September 30, 1998. Presumably to spread the risk, multiple insurers provided coverage under these policies, and the parties agree that the language of the 1997–98 policy in effect between Amtrak and each individual insurer is identical in all respects relevant to this appeal (we thus refer to that common language as the "1997–98 policy").

The 1997–98 policy was titled a "claims-made liability policy." "Claims-made" is the term generally used to describe insurance policies under which the insurer agrees to indemni-

fy the insured party against all claims made during the period of the policy, regardless whether the incident that gave rise to the claim occurred during the policy term. Black's Law Dictionary 809 (7th ed. 1999). The 1997–98 policy, however, had, in all-capital letters at the top of the policy, the following qualification:

> THIS IS AN EXCESS LIABILITY CLAIMS MADE POLICY WHICH IS NOT SUBJECT TO THE TERMS AND CONDITIONS OF ANY OTHER INSURANCE AND CONTAINS PROVISIONS WHICH MAY BE DIFFERENT FROM THOSE OF ANY OTHER IN-SURANCE.
> IT SHOULD BE READ CAREFULLY BY THE IN-SURED.

The scope of the 1997–98 policy's basic coverage was defined nominally in claims-made terms. In particular, the policy provided that the insurers agreed

> subject to the Insuring Agreements, Exclusions, Conditions, Definitions and Declarations contained in this Policy, to indemnify [Amtrak] . . . for damages in respect of a Claim which is first made in writing against [Amtrak] during the period of this Policy [October 1, 1997, though September 30, 1998] . . . resulting from an Accident.

The term "Accident," however, was a term of art that the policy defined. Eleven pages later, in the definitions portion of the policy, the term "Accident" was defined as

> an event which first commences at a specific time after the retroactive date [October 1, 1995] and prior to the expiry date [September 30, 1998] and of which [Amtrak's] Claim Agent first becomes aware during the Policy Period [October 1, 1997, through September 30, 1998] and up to 120 days thereafter.

The policy's definitions section also explicitly defined "Claim." That term was defined as "that part of any written demand received by [Amtrak] for damages covered by this Policy, including the service of suit, institution of arbitration proceedings or receipt of an attorney's lien."

The event that gave rise to this coverage dispute occurred on August 29, 1997, when Kimberly Alcorn was seriously injured in a railroad crossing automobile accident in Missouri. *See Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d 226, 231 (Mo. 2001). Union Pacific Railroad Company owned and operated the crossing, but Amtrak had contractually agreed to indemnify Union Pacific for any liability arising out of such accidents. Alcorn brought a personal-injury action against Amtrak and Union Pacific in Missouri state court; the indemnification agreement meant that Amtrak was fully responsible for Union Pacific's liability. The jury awarded Alcorn $40 million in compensatory damages and $120 million in punitive damages, but the trial court remitted the compensatory damage award to $25 million and the punitive award to $50 million. *Id.* On appeal, the Missouri Supreme Court struck down the punitive damage award entirely, but upheld the remitted compensatory award. *Id.* at 247–49.

The parties agree that Amtrak first learned of the event by a telephone call placed to one of its claim agents on September 2, 1997. Alcorn did not serve Amtrak with her suit, however, until January 20, 1998. Pursuant to its operating agreement with Union Pacific, Amtrak handled the defense of the litigation.

After Amtrak paid the $25 million judgment, it sought reimbursement from its insurers under the 1997–98 policy. The insurers refused to cover the accident under that policy. In response, Amtrak sued them in federal district court seeking coverage. The insurers moved for summary judgment, claiming that the policy entitled them to treat the Alcorn claim as having arisen at the time Amtrak's claim agent became aware of the accident, September 2, 1997, less than a month before the 1997–98 policy period began. Amtrak took the position that the claim arose instead when Alcorn served her lawsuit on Amtrak, January 20, 1998, during the 1997–98 policy period—and therefore that the 1997–98 policy covered the Alcorn claim. The district court agreed with the insurers and granted them summary judgment. This appeal followed.

## II.

The only issue we need address in this case is whether the language of the 1997–98 policy covers the Alcorn claim. The parties agree that under either District of Columbia or Missouri law, the only two jurisdictions whose law potentially could apply in this case, we must follow the plain language of the insurance agreement unless that language is ambiguous. Because, as we explain more fully below, this rule of decision is sufficient to dispose of this case, we need not delve into choice of law issues, as there is no conflict of law for this Court to resolve. *See Cruz v. Am. Airlines, Inc.*, 356 F.3d 320, 331–32 (D.C. Cir. 2004) (noting same). We should affirm the district court's grant of summary judgment if we believe the court was correct that the insurers are entitled to judgment, viewing the facts in the light most favorable to the nonmoving party. *Id.* at 328.

The key language is the policy's basic coverage provision, which, again, provided that the insurers agreed

> subject to the Insuring Agreements, Exclusions, Conditions, Definitions and Declarations contained in this Policy, to indemnify [Amtrak] . . . for damages in respect of a Claim which is first made in writing against [Amtrak] during the period of this Policy [October 1, 1997, though September 30, 1998] . . . resulting from an Accident.

Amtrak argues that the Alcorn claim "unquestionably" falls within this provision, because Alcorn served Amtrak with her suit on January 20, and that was her first written demand for payment. Amtrak infers from this fact that her claim was "first made in writing" at that date, during the 1997–98 policy period of October 1, 1997, through September 30, 1998, and therefore is covered by the 1997–98 policy.

Amtrak's argument is wrong. The policy did not, as Amtrak's argument suggests, cover all claims first made in writing during the policy period. Instead, the policy covered claims first made in writing during the policy period "resulting from an Accident." This distinction makes all the difference in this case, because the Alcorn claim did not result from

an "Accident," and thus was not covered under the plain terms of the 1997–98 policy.

The definition of the term "Accident" in the policy makes this conclusion clear. "Accident," once again, was defined as

> an event which first commences at a specific time after the retroactive date [October 1, 1995] and prior to the expiry date [September 30, 1998] and of *which [Amtrak's] Claim Agent first becomes aware during the Policy Period* [October 1, 1997, through September 30, 1998] and up to 120 days thereafter.

(Emphasis added.) The Alcorn accident was not an "Accident" within the meaning of this provision. It is undisputed that Amtrak's claim agent first became aware of that event on September 2, 1997, nearly a month before the 1997–98 policy period began. Therefore, the policy did not cover the Alcorn claim. Amtrak is not entitled to coverage under the policy. The district court was therefore correct that the insurers are entitled to judgment as a matter of law.

Amtrak's argument to the contrary is not persuasive. Amtrak's primary argument, in a nutshell, is that the insurance agreement is ambiguous as to whether the Alcorn claim is covered, and that in view of the generic "claims-made" nature of the policy, we should read the policy to cover the Alcorn claim, as that claim was "made" during the policy period. We are willing to assume, without deciding, that Amtrak would be the beneficiary of any such ambiguity were one present in the policy. But the policy is anything but ambiguous. The definition of "Accident" could hardly be more clear that Alcorn's claim did not result from an accident in the special sense that word is used in the insurance agreement. Thus, we do not, as Amtrak colorfully puts it, "proceed down a coverage rabbit hole into a wonderland where indemnity coverage under the 1997–98 policies turns out *not* to be 'in respect of a Claim which is *first made* in writing against the Insured during the period of this Policy.'" We hold instead that even though the Alcorn claim was a claim first made in writing against Amtrak during the policy period, it did not

result from an "Accident" within the meaning of the policy and thus was not covered.

## III.

For the foregoing reasons, we affirm the judgment of the district court.