Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 13, 2004      Decided October 26, 2004

No. 03-7083

MEDIA GENERAL, INC., A VIRGINIA CORPORATION,
APPELLANT

v.

DONALD R. TOMLIN, JR., INDIVIDUALLY AND AS TRUSTEE
OF THE TOMLIN FAMILY TRUST, ET AL.,
APPELLEES

———

Consolidated with
No. 03-7123

———

Appeals from the United States District Court
for the District of Columbia
(No. 98cv01690)

———

*David E. Mills* argued the cause for appellant. With him on the briefs was *Michael D. Rothberg*.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*George H. Mernick, III* argued the cause for appellees. With him on the brief were *Albert W. Turnbull*, *John Rounsaville, Jr.*, *R. Kevin Bailey*, *Richard A. Getty*, *William B. Mallin*, and *Emily A. Nack*.

Before: EDWARDS, HENDERSON, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

EDWARDS, *Circuit Judge*: This case emanates from a stock purchase transaction pursuant to which appellant Media General, Inc. ("Media General") acquired Park Communications, Inc. ("Park") from Donald R. Tomlin, Jr. ("Tomlin") and Gary B. Knapp ("Knapp"), Park's sole shareholders. After the deal had been closed, Media General filed an action in District Court against appellees Tomlin, Knapp, Wright M. Thomas ("Thomas"), Stephen I. Burr ("Burr"), and the law firm Eckert Seamans Cherin & Mellott, LLC ("Eckert Seamans"), alleging securities fraud under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (2000), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5 (2004), common law fraud, and civil conspiracy, and seeking damages in connection with its purchase of Park. Media General's principal complaint is that, during their negotiations, appellees deliberately deceived Media General by concealing and misrepresenting a threat by a former Park employee, Rick A. Prusator ("Prusator"), to bring a multimillion dollar law suit against Park. Media General contends that, in concealing the full extent of Prusator's claims, Park unlawfully withheld information that was material at the time of negotiations between Park and Media General.

The District Court granted summary judgment to appellees. The trial court noted that, within 15 days of acquiring Park, Media General was legally required to file an 8-K Form with the SEC disclosing any material contingencies such as lawsuits that might be material to Park's financial condition. Although Media General became aware of the full extent of

Prusator's claims within two weeks of acquiring Park, the Prusator claims were not listed as a material loss contingency in the 8-K filing. In the District Court's view, the 8-K filing proved beyond any doubt that the Prusator claims were not material to Media General. The District Court thus held that, "[h]aving conceded in this case that it deemed the Prusator litigation not to be material, [Media General] cannot now oppose summary judgment against it by claiming that [appellees'] alleged failure to disclose the full extent of Prusator's claims was material." *Media General, Inc. v. Tomlin*, No. 98-1690, Mem. Op. at 7 (D.D.C. June 18, 2003). Because materiality is an essential element of each of Media General's claims, the District Court concluded that appellees were entitled to summary judgment.

Media General now appeals, claiming that the District Court erred in concluding that Media General's 8-K filing constituted a concession that Prusator's threatened claims were not material to its purchase of Park. On the record at hand, we conclude that Media General has created a triable question of fact as to whether the relevant circumstances changed between the time of the closing and the time of the SEC filing. A reasonable jury could find that the Prusator matter was material at the time of the negotiations between Park and Media General even though it was later viewed as immaterial at the time of the 8-K filing. The District Court thus erred in granting summary judgment to appellees. Accordingly, we reverse and remand the case to the District Court for further proceedings.

## I. BACKGROUND

On July 19, 1996, appellant Media General, a publicly owned communications company, entered into a merger agreement (the "Merger Agreement") with Park Acquisitions, Inc. ("PAI"), a holding company for Park's stock. The Merger Agreement specified that Media General would gain control of all Park stock in exchange for cash payments to Tomlin and Knapp, Park's sole shareholders. The total consideration for the merger was to be $710 million, exclusive of

certain adjustments and debt to be assumed by Media General. At closing, Thomas, president of Park, was to receive a substantial severance package. Burr and his law firm, Eckert Seamans, represented Park, PAI, Tomlin, and Knapp during the merger negotiations. *Media General, Inc. v. Tomlin*, No. Civ. A. 98-1690, 2001 WL 1230880, at * 1 (D.D.C. Aug. 9, 2001).

Prior to the Merger Agreement, Park had terminated Prusator, then a vice president of the company. In September 1996, Prusator asserted that Park owed him $139,000 in severance pay. Letter from Eckert Seamans to Coopers of 12/4/96, Joint Appendix ("J.A.") 316-17. Park refused to pay Prusator's claim. On September 20, 1996, Prusator sent Media General a letter stating that he expected Media General to assume various benefits that Park had been providing as part of his severance package. The letter also informed Media General about the existence of an unresolved claim relating to a severance payment. On November 9, 1996, Prusator's attorney sent a letter to Park's counsel, Eckert Seamans, with new and dramatically increased demands from Prusator. The November 9 letter threatened a RICO lawsuit and other causes of action against Park, contended that Prusator would show compensatory damages in the range of $3 million to $6 million, enclosed a draft complaint, and requested $3 million to settle Prusator's claims. *Media General*, 2001 WL 1230880, at * 1. Media General was not copied on the November 9, 1996 letter.

On December 4, 1996, Eckert Seamans prepared an audit response letter ("Audit Letter") for Park's auditors, Coopers & Lybrand, LLC ("Coopers"), in which they reported Prusator's expanded claims as a "material loss contingenc[y]." *See* Eckert Seamans Letter, J.A. 316-17; Deposition of Stephen I. Burr, 7/2/02, J.A. 757-58. The Audit Letter indicates that Eckert Seamans was "unable to predict the outcome or to estimate the amount or range of potential loss with respect to [the Prusator] matter." Eckert Seamans Letter, J.A. 317. Following receipt of the Audit Letter, Coopers concluded that the Prusator claims "met [Coopers'] materiality thresholds for disclosure" and included a footnote referencing Prusator

in Park's draft audited financial statement for the period ending September 30, 1996. Deposition of Phillip N. Gregory, 11/20/02, J.A. 872-78. Media General did not see the Audit Letter or the draft audited financial statement until January 1997, after the merger deal had been closed.

Media General alleges that, in the months after it received Prusator's September 20, 1996 letter, it made several inquiries of Park regarding the details of Prusator's claims and was never informed by appellees of Prusator's new claims. *See* Deposition of Stephen Y. Dickinson, 5/9/02, J.A. 579-87; Deposition of Marshall N. Morton, 8/27/02, J.A. 798. According to Media General, on January 6, 1997, the day before the scheduled closing of the merger, Thomas and Burr stated that the maximum liability that could result from Prusator's threatened lawsuit was $139,000. At closing, the parties agreed to amend the Merger Agreement to provide that Media General would assume responsibility for the resolution of Prusator's claims in exchange for a $147,000 reduction in the purchase price, which constituted the amount of the disputed severance payment plus an allowance for fees and expenses.

On January 8, 1997, the day after closing, Media General received a facsimile copy of the draft audited financial statement that had been prepared by Coopers. The statement included information on Prusator's expanded claims and threatened lawsuit. *Media General*, 2001 WL 1230880, at *2-3. Shortly thereafter, Media General's outside counsel allegedly called Burr at Eckert Seamans to express "anger and disappointment" at not having been informed of Prusator's expanded claims which Park's attorneys deemed sufficiently important to include in their December 4, 1996 Audit Letter and Park's auditors deemed important enough to disclose in the draft financial statement. Deposition of Leonard Baxt, 6/4/02, J.A. 677. Burr then called an auditor at Coopers to inquire about the reference to the Prusator claims in the draft financial statement. Burr was told that Coopers would likely consider removing the footnote referencing Prusator only if Eckert Seamans offered a different evaluation of Prusator's likelihood of success on his additional claims, *i.e.*,

an evaluation different from the one that Eckert Seamans had given in its December 4, 1996 Audit Letter. *See* Burr Deposition, J.A. 764-67. On January 14, 1997, Burr sent a letter to Coopers stating the view that Prusator's likelihood of success on his additional claims was "remote." Letter from Stephen I. Burr to Phillip N. Gregory of 1/14/97, J.A. 370. Coopers then agreed that the Prusator matter could be deleted from the footnotes in Park's draft financial statement. Media General was informed of this change in the draft financial statement.

On January 21, 1997, in accordance with SEC regulations, Media General filed an 8-K form with the SEC. In its 8-K filing, Media General was required to disclose any contingencies that would be material to Park's financial condition. *See* 17 C.F.R. §§ 240.13a-11; 210.10-01(a)(5) (2004). In light of the January 14, 1997 "remoteness" letter from Eckert Seamans and Coopers' decision to delete the Prusator matter from the draft financial statement, Media General concluded that it was unnecessary to include Prusator's threatened litigation in its 8-K filing. *See* Morton Deposition, 8/27/02, J.A. 813-14. The Coopers auditor agreed that the changed assessment of Prusator's likelihood of success on his additional claims relieved Media General of any requirement to report the Prusator matter in its 8-K filing. *See* Gregory Deposition, 11/20/02, J.A. 885-86.

On February 7, 1997, Media General offered to settle the Prusator matter for $139,000. Prusator rejected the offer and filed an action in the Eastern District of Kentucky against Park, PAI, Thomas, Knapp, Tomlin, and Media General. After nine of the 10 counts in Prusator's complaint withstood a motion to dismiss, Media General and Prusator settled for $205,000. *Media General*, 2001 WL 1230880, at *3.

Media General filed the present action in the District Court for the District of Columbia against Tomlin, Knapp, Thomas, Burr, and Eckert Seamans, alleging that defendants had violated SEC Rule 10b-5, committed common law fraud, and engaged in a civil conspiracy. Defendants moved to dismiss

for failure to state a claim, but this motion was denied in August 2001. *Id.* at \*1. Following extensive discovery, defendants moved for summary judgment. In June 2003, the District Court granted the motion. The District Court held that Media General had conceded that the allegedly concealed information regarding Prusator's claims was immaterial, which meant Media General could not satisfy the elements of its Rule 10b-5 or common law fraud claims. By extension, the District Court ruled that Media General could not succeed on its conspiracy claim, which requires the existence of an agreement to participate in an unlawful act. *Media General*, No. 98-1690, Mem. Op. at 4-9 (D.D.C. June 18, 2003). The District Court also awarded defendants costs. *Media General, Inc. v. Tomlin*, No. 98-1690, Ord. (D.D.C. Aug. 5, 2003). Media General appeals both rulings.

## II. ANALYSIS

### A. *Standard of Review*

This court reviews the District Court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party. *Cruz v. American Airlines, Inc.*, 356 F.3d 320, 328 (D.C. Cir. 2004). The District Court's judgment will be affirmed only if appellees have demonstrated that there is no genuine issue of material fact as to whether they are entitled to judgment. *See id.* Moreover, if material facts are susceptible to divergent inferences, we must reverse the District Court's grant of summary judgment. *See Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Whether alleged misrepresentations or omissions are material under the securities laws is a mixed question of law and fact that is particularly well suited for jury determination. *See, e.g., Mendell v. Greenberg*, 927 F.2d 667, 673 (2d Cir. 1990), *modified on other grounds*, 938 F.2d 1528 (2d Cir. 1991). Materiality should be resolved by summary judgment only if "the alleged misrepresentations or omissions are so clearly unimportant to an investment decision that reasonable minds cannot differ . . . ." *Berg v. First Am. Bankshares, Inc.*, 796 F.2d 489, 495 (D.C. Cir. 1986).

### B. *The Materiality of the Prusator Claims*

Materiality is an essential element of Media General's fraud claims under both Rule 10b-5, *see Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), and District of Columbia tort law, *see Railan v. Katyal*, 766 A.2d 998, 1009 (D.C. 2001). Because a civil conspiracy requires an agreement to participate in an unlawful act, materiality is also an essential element of Media General's civil conspiracy claim. *See Weishapl v. Sowers,* 771 A.2d 1014, 1023 (D.C. 2001).

In *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988), the Supreme Court articulated the general test for determining whether a fact is material under the federal securities laws: "to fulfill the materiality requirement 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available'" (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). Under this test, the materiality of a misrepresentation or omission must be assessed as of the time of the contested transaction. Thus, in this case, if Prusator's claims were a material contingency at the time of the Media General/Park merger closing, it is irrelevant that Media General and Prusator subsequently settled the claims for an amount well under the multimillion dollar sum that Prusator initially sought. *See, e.g., Pommer v. Medtest Corp.*, 961 F.2d 620, 623 (7th Cir. 1992) (noting that the "securities laws approach matters from an *ex ante* perspective"). Like the parties, we assume that the same materiality standard under the federal securities laws governs Media General's common law claims.

By granting their motion for summary judgment, the District Court concluded that no reasonable jury could find that appellees' alleged nondisclosures to Media General were material. We disagree with the District Court's conclusion.

A reasonable jury could decide that, had Media General known about the expanded Prusator claims at the time of closing, the terms of the merger would have been different. Indeed, at closing, the parties agreed that Media General

would assume responsibility for the Prusator lawsuit in exchange for a reduction of $147,000 in the purchase price based on Prusator's severance claim. The potential materiality of Prusator's expanded claims is further supported by the testimony of Park's counsel Burr. Burr, who knew about the Prusator litigation before the merger closing, stated that he would have wanted to know about Prusator's expanded claims if he had been in Media General's position. Burr Deposition, J.A. 740-42. This testimony is not dispositive, but it certainly suggests that reasonable investors could have concluded that the expanded Prusator claims were material to Media General's acquisition of Park. *See, e.g., SEC v. Mayhew*, 121 F.3d 44, 52 (2d Cir. 1997) ("[A] major factor in determining whether information was material is the importance attached to it by those who knew about it.").

In concluding that the threatened Prusator lawsuit was immaterial as a matter of law, the District Court relied on the fact that Media General filed an 8-K statement within two weeks of the merger closing and failed to list the Prusator matter as a material contingency even though Media General knew the full extent of Prusator's claims at the time of its 8-K filing. The District Court also noted that Media General's Chief Financial Officer ("CFO") Marshall N. Morton ("Morton") testified that he would not have signed the 8-K form as filed had he believed the Prusator litigation was material. From these facts, the District Court determined that defendants were entitled to summary judgment because the 8-K filing constituted a concession by Media General that Prusator's claims were not material to its purchase of Park. See *Media General*, No. 98-1690, Mem. Op. at 6-8 (D.D.C. June 18, 2003). This line of reasoning cannot withstand scrutiny under the applicable law governing materiality and summary judgments.

On December 4, 1996, approximately one month before the deal closed, Eckert Seamans sent Coopers the Audit Letter in which Prusator's expanded claims were reported as a material loss contingency. However, after closing, but before Media General filed its 8-K statement, Burr wrote a letter to Phillip N. Gregory ("Gregory"), the auditor at Coopers, in which he

concluded that the new claims were in fact remote. Media General argues that it relied on Burr's January 14 letter in deciding that the Prusator matter was not material when it filed the 8-K statement. Appellees respond that, in the December 4 letter, Burr simply included all claims of $100,000 or more against Park, regardless of their likelihood of success. *See* Letter from Michael E. Reed to Stephen I. Burr of 10/31/96, J.A. 242-43; Burr Deposition, J.A. 759-60. Appellees also argue that Burr consistently held the view that Prusator's expanded claims were remote, and that he did not conduct any additional investigation before writing the January 14 letter.

This dispute over the import of Burr's letter is precisely the kind of fact-specific question that should be resolved by a jury. Ample evidence in the record suggests that a reasonable jury could find that Burr changed his opinion about the remoteness of the Prusator litigation, and that this meant, from Media General's perspective, that the potential litigation was material at the time of closing but immaterial by the time it filed its 8-K statement. Several facts support this view.

First, the January 14 letter Burr sent Gregory is subject to an interpretation suggesting that Burr did additional research post-closing, which altered his view of the Prusator matter. In that letter, Burr wrote:

> You asked me for an evaluation of the merits of the claims made by Rick Prusator referred to in our audit response letter of December 4, 1996. I have reviewed the claims made by Prusator and discussed *the underlying factual circumstances* with Tom Thomas, who was President of Park Communications at the relevant time. Based upon that review and those discussions with Mr. Thomas, I have come to the conclusion that [Prusator's likelihood of success on his expanded claims is] remote.

Burr Letter, J.A. 370 (emphasis added). Second, Gregory testified that he understood the January 14 letter to state that the Prusator claims were remote, whereas the December 4 letter did not. Gregory Deposition, J.A. 884-87. Finally,

Media General's CFO Morton testified that it was on the basis of the January 14 letter, which, in his view, represented a considered change in Burr's opinion, that Morton concluded that the potential Prusator lawsuit would not have a material adverse effect on the business, operations, or financial condition of Park. Morton Deposition, J.A. 813-14. In short, the record in this case makes it clear that there is a triable issue of fact as to whether relevant circumstances changed between the closing of the merger and Media General's 8-K filing. Therefore, summary judgment was inappropriate.

In reaching this conclusion, we do not embrace Media General's sweeping contention that post-transaction evidence can never be considered as relevant in analyzing whether an alleged misrepresentation or omission was material at the time of the transaction. This argument goes much too far in what it suggests. *See, e.g., RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.,* No. 94Civ.5587, 2002 WL 31780188, at *2 (S.D.N.Y. Dec. 11, 2002) (explaining that "simply stating that materiality and scienter are determined based on the facts at the time of the alleged misstatement does not mean that later occurring evidence is irrelevant," and denying motion to exclude evidence relating to events occurring after the period of the alleged Rule 10b-5 violation).

The District Court's error in this case was not its consideration of post-closing evidence, but, rather, its determination that the 8-K filing demonstrated beyond any doubt that Media General had conceded that the Prusator claims were not material to its purchase of Park. Because of the changed circumstances between the time of the merger closing and the time when Media General filed its 8-K statement, the material facts are susceptible to divergent inferences. Therefore, the District Court had no basis upon which to grant summary judgment for appellees.

Finally, we turn briefly to appellees' contention that the Merger Agreement prevents Media General from demonstrating that the Prusator litigation was material at the time of the merger closing. In advancing this argument, appellees rely on § 8.3 of the July 1996 Merger Agreement, which

indicates that Media General could not refuse to close under the terms of that agreement unless an event occurred that had a "Company Material Adverse Effect" on Park. Merger Agreement, J.A. 138-39. Section 4.1 defines a Company Material Adverse Effect as a "material adverse effect on the business, operations or financial condition of [Park] taken as a whole." *Id.* at J.A. 118. Because Media General ultimately concluded that the Prusator litigation did not have a material adverse effect on Park's business, operations, or financial condition, appellees contend that Media General would have been unable to walk away from the transaction or negotiate substantially different terms before closing based on the existence of Prusator's claims. There are at least two problems with this argument.

First, Media General claims that its determination that the Prusator litigation did not have a material adverse effect on Park's business, operations, or financial condition was made only after Park's counsel and auditors changed their views on the "remoteness" of Prusator's claims. Appellees suggest otherwise. This is a matter for a trier of facts.

Second, implicit in appellees' argument is the suggestion that a contingency cannot be material with respect to closing negotiations if it does not rise to the level of a Company Material Adverse Effect as defined by the Merger Agreement. The parties' agreement does not say this and, at least intuitively, the proposition seems unsound. Indeed, at closing, the parties here negotiated hard over the Prusator matter and agreed to amend the Merger Agreement to provide that Media General would assume responsibility for the resolution of Prusator's severance claims in exchange for a $147,000 reduction in the purchase price. Media General argues quite reasonably that it would have sought substantially greater concessions had it known of Prusator's expanded claims at closing.

In short, the cited provisions in the parties' Merger Agreement are not dispositive of the materiality question before the court. In a trial on the merits, appellees are free to raise the Merger Agreement and suggest to the trier of fact favorable

inferences that ought to be drawn from the agreement. But these are not matters that can be resolved on summary judgment.

### III.  CONCLUSION

The District Court's grant of summary judgment and award of costs to appellees are hereby reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*