# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued May 9, 2014          Decided August 22, 2014

No. 13-1033

SOUTHWESTERN POWER ADMINISTRATION, ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

MID-WEST ELECTRIC CONSUMERS ASSOCIATION, INC., ET AL.,
INTERVENORS

On Petition for Review of an Order of the
Federal Energy Regulatory Commission

*Henry C. Whitaker*, Attorney, U.S. Department of Justice, argued the cause for petitioners. With him on the briefs were *Stuart F. Delery*, Acting Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, and *Michael S. Raab*, Attorney.

*Sherry Quirk*, *David Fitzgerald*, *Jeffrey C. Genzer*, and *Kristen Connolly McCullough* were on the brief for intervenors Mid-West Electric Consumers Association, et al. in support of petitioners. *Monica M. Berry* entered an appearance.

*Lona T. Perry*, Senior Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *David L. Morenoff*, Acting General Counsel, and *Robert H. Solomon*, Solicitor.

*Rebecca J. Michael* and *Sonia C. Mendonça* were on the brief for intervenor North American Electric Reliability Corporation in support of respondent. *Meredith M. Jolivert* entered an appearance.

Before: GARLAND, *Chief Judge*, and SRINIVASAN and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*:   Section 215(b)(1) of the Federal Power Act grants the Federal Energy Regulatory Commission jurisdiction over "all users, owners and operators of the bulk-power system . . . for purposes of approving reliability standards . . . and enforcing compliance."   The terms of that provision specify that the group of "users, owners and operators" generally subjected to the Commission's jurisdiction "include[s]" the United States.   A different provision, section 215(e) of the Federal Power Act, authorizes the Commission and its designee the North American Electric Reliability Corporation to impose monetary penalties on "a user or owner or operator of the bulk-power system" for violations of reliability standards. That provision contains no separate specification that "a user or owner or operator" subject to the imposition of monetary penalties includes the United States.

The Corporation, asserting its power under section 215(e)(1), assessed a monetary fine against the Southwestern Power Administration, a federal government entity that

3

markets hydroelectric power. Southwestern, along with the Department of Energy and the Department of the Interior, appealed the penalty to the Commission. They argued that the relevant provisions of the Federal Power Act effect no unequivocal waiver of the United States's sovereign immunity from monetary penalties, as would be necessary to sustain the fine. The Commission upheld the penalty. It reasoned that section 215(b)(1) and section 215(e) work in tandem to establish an unambiguous waiver of sovereign immunity with regard to monetary penalties.

We disagree. Section 215(b)(1) generally subjects federal government entities to the Commission's jurisdiction to enforce compliance. But to authorize a monetary award against the federal government, the statute must do more than generally bring the government within the Commission's enforcement jurisdiction—it must unequivocally subject the government to monetary liability. Neither section 215(b) nor section 215(e), nor the two considered in combination, speaks with the requisite clarity to waive the federal government's sovereign immunity from monetary penalties. We therefore vacate the Commission's order.

I.

Section 215 of the Federal Power Act requires the development and enforcement of mandatory reliability standards for the bulk-power system. *See* 16 U.S.C. § 824o. The bulk-power system is the interconnected transmission network that makes up the nation's electrical power grid, including the power plants and related facilities responsible for transferring electrical energy through the system. *See id.* § 824o(a)(1). Section 215 calls for the Federal Energy Regulatory Commission to certify an Electric Reliability Organization, which, subject to FERC's review, would

develop and enforce reliability standards for the bulk-power system. *Id.* § 824o(a)(2), (c). In 2006, FERC certified the North American Electric Reliability Corporation, a private corporation, as the Electric Reliability Organization. *See Alcoa Inc. v. FERC*, 564 F.3d 1342, 1345 (D.C. Cir. 2009). The Corporation, with FERC approval, has promulgated a number of reliability standards. *See, e.g.*, FERC, Transmission Relay Loadability Reliability Standard, Order No. 733, 130 FERC ¶ 61,221 (2010); FERC, Mandatory Reliability Standards for the Bulk-Power System, Order No. 693-A, 120 FERC ¶ 61,053 (2007).

## A.

The Federal Power Act provisions addressing enforcement of those reliability standards lie at the center of this case. First, section 215(b)(1), entitled "Jurisdiction and applicability," generally outlines FERC's jurisdiction:

> The Commission shall have jurisdiction, within the United States, over the [Electric Reliability Organization] certified by the Commission under subsection (c) of this section, any regional entities, and all users, owners and operators of the bulk-power system, including but not limited to the entities described in section 824(f) of this title, for purposes of approving reliability standards established under this section and enforcing compliance with this section. All users, owners and operators of the bulk-power system shall comply with reliability standards that take effect under this section.

16 U.S.C. § 824o(b)(1). The "entities described in section 824(f)" over which FERC is given jurisdiction consist of "the

United States, a State or any political subdivision of a State," and certain "electric cooperative[s]," as well as associated entities and individuals. 16 U.S.C. § 824(f).

A separate provision of the Federal Power Act, section 215(e), entitled "Enforcement," addresses both FERC's and the Electric Reliability Organization's enforcement authority. Under section 215(e)(1), the Electric Reliability Organization "may impose . . . a penalty on a user or owner or operator of the bulk-power system for a violation of a reliability standard," subject to certain procedural requirements. *Id.* § 824o(e)(1). The penalties that may be assessed by the Electric Reliability Organization include monetary sanctions. *See id.* § 825o-1(b). The Electric Reliability Organization files any penalty assessment with FERC, which may review the penalty on its own motion or upon a sanctioned party's motion for review. *Id.* § 824o(e)(2). Section 215(e) also speaks to FERC's own enforcement capabilities. Under section 215(e)(3), FERC "may order compliance with a reliability standard and may impose a penalty against a user or owner or operator of the bulk-power system" upon finding a violation (or future violation) of a reliability standard. *Id.* § 824o(e)(3).

Finally, section 316A of the Federal Power Act, entitled "Enforcement of certain provisions," generally authorizes FERC to assess a "civil penalty of not more than $1,000,000" per day against "[a]ny person who violates any provision of subchapter II of this chapter or any provision of any rule or order thereunder." 16 U.S.C. § 825o-1(b). The "provision[s] of subchapter II" include section 215's provisions addressing reliability standards for the bulk-power system. Section 316A's conferral of power to impose monetary penalties for violations of those and other provisions does not authorize penalties against the federal government: Section 316A

allows for penalties against "any person" who violates the referenced provisions and rules, and the Federal Power Act defines the term "person" in a manner excluding the United States.  *See* 16 U.S.C. § 796(4) ("person means an individual or a corporation") (internal quotation marks omitted).

B.

In this case, the Corporation, relying on its authority under section 215(e)(1), assessed a monetary penalty of $19,500 against the Southwestern Power Administration for violating various reliability standards.  Southwestern, a federal power marketing agency, is a subdivision of the Department of Energy.  It markets hydroelectric power produced from Army Corps of Engineers projects in the southwestern United States.

Southwestern, the Department of Energy, and the Department of Interior contested the monetary penalty before FERC.  They disputed neither Southwestern's obligation to adhere to the reliability standards nor its violation of those standards.  Instead, they contested Southwestern's amenability to a monetary sanction, arguing that section 215 contains no unambiguous waiver of the federal government's sovereign immunity from monetary penalties.  FERC disagreed, determining that section 215 unequivocally waives sovereign immunity.  FERC, Order on Review of Notice of Penalty, Docket No. NP-11-238-000, 140 FERC 61,048 ¶ 42 (2012), *reh'g denied*, FERC, Order Denying Rehearing, 141 FERC 61,242 ¶ 26 (2012) (Rehearing Order).  FERC reasoned that section 215(b)(1) "serves to define the scope of 'all users, owners and operators of the Bulk-Power system' as that term is to be applied to the remainder of . . . section 215." Rehearing Order ¶ 41.  Section 215(b)(1) specifically includes the United States among the "users, owners and operators"

addressed by that provision. In FERC's view, the inclusion of the United States among the "users, owners, and operators" over which FERC is given jurisdiction by section 215(b)(1) carries through to 215(e)'s reference to the "user[s] or owner[s] or operator[s]" against which the Corporation or Commission may assess monetary fines. In that fashion, FERC concluded, the combination of section 215(b)(1) and 215(e) unambiguously waives the federal government's sovereign immunity from monetary penalties.

FERC also rejected Southwestern's contention that section 316A confines the reach of section 215's monetary-penalty authority to non-governmental entities. Southwestern argued that section 316A encompasses monetary fines for violations of section 215 and rules promulgated thereunder, but confines section 215's penalty authority only to "person[s]," a term defined to exclude the United States. FERC determined that section 215 is unconstrained by section 316A and instead "acts as a separate grant of penalty authority with respect to violations of mandatory Reliability Standards." *Id.* ¶ 47.

FERC therefore upheld the Corporation's imposition of a monetary penalty against Southwestern. Southwestern, the Department of Energy, and the Department of the Interior appeal.

## II.

This case revolves around the settled understanding that a waiver of sovereign immunity "must be unequivocally expressed in statutory text and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted). We have applied that principle in the context of a dispute like this one pitting an independent agency against another federal

government entity. *See Dep't of Army v. Fed. Labor Relations Auth.*, 56 F.3d 273, 275-76 (D.C. Cir. 1995). It requires us to construe "[a]ny ambiguities in the statutory language . . . in favor of immunity." *FAA v. Cooper*, 132 S. Ct. 1441, 1448 (2012). While Congress need not "use magic words," the waiver must be "clearly discernable from the statutory text in light of traditional interpretative tools." *Id.* If the issue specifically concerns whether "the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Lane*, 518 U.S. at 192; *see United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992). And "[a]mbiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government." *Cooper*, 132 S. Ct. at 1448; *accord Nordic Vill.*, 503 U.S. at 34, 37.

Viewed through the lens of those strict standards, section 215 of the Federal Power Act effects no unequivocal waiver of the federal government's sovereign immunity from monetary penalties. The Corporation imposed the fine in this case pursuant to its authority under section 215(e)(1), the provision addressed specifically to the Corporation's power to assess penalties. That provision enables the Corporation to assess a penalty against "a user or owner or operator of the bulk-power system" found to violate reliability standards. 16 U.S.C. § 824o(e)(1); *see also id*. § 824o(e)(3) (authorizing Commission to impose penalties against "a user or owner or operator"). The terms of that provision, considered on their face, make no reference to penalties against the federal government. A "user or owner or operator" is not a defined term in section 215's "Definitions" provision, *see id*. § 824o(a), or in the Federal Power Act's general "Definitions" provision, *see id*. § 796. Because section 215(e) "makes no mention whatsoever" of the federal government, *Lane*, 518

U.S. at 192, that provision, standing alone, plainly establishes no unambiguous waiver of the federal government's sovereign immunity from monetary penalties.

FERC grounds its assertion of an unequivocal waiver in a separate provision, section 215(b)(1). That provision generally sets out FERC's jurisdiction with regard to the promulgation and enforcement of electric reliability standards for the bulk-power system. It grants FERC jurisdiction "over the [Electric Reliability Organization] certified by the Commission," over "any regional entities," and over "all users, owners and operators of the bulk-power system, *including but not limited to the entities described in section 824(f) of this title*, for purposes of approving reliability standards established under this section and enforcing compliance with this section." 16 U.S.C. § 824o(b)(1) (emphasis added). The provision's cross-reference "to the entities described in section 824(f)" in turn brings within FERC's jurisdictional compass "the United States, a State or any political subdivision of a State," certain "electric cooperative[s]," and associated entities and individuals. *Id.* § 824(f). Section 215(b)(1)'s general grant of jurisdiction to FERC to approve and enforce compliance with reliability standards thus includes the United States within the field of covered "users, owners and operators." In FERC's view, because section 215(b)(1) includes the United States among the "users, owners and operators" over which the Commission generally possesses jurisdiction to enforce reliability standards, and because section 215(e) speaks to the exercise of enforcement authority, the term "user or owner or operator" in section 215(e) necessarily is defined by section 215(b)(1) to include the United States.

There is a logic to FERC's interpretation, but we are required to construe any ambiguity against a waiver of

sovereign immunity. The statute is not "so free from ambiguity that we can comfortably conclude . . . that Congress intended to subject the Federal Government to awards of monetary damages." *Lane*, 518 U.S. at 200. Contrary to FERC's reading, section 215(b)(1) does not unambiguously define "users, owners and operators" as including the United States for all of section 215. Another provision defines certain terms "[f]or purposes of" section 215, but that provision contains no definition of "users, owners and operators." 16 U.S.C. § 824o(a). Section 215(b)(1) instead generally grants FERC jurisdiction over a number of entities and individuals—including the United States—"for purposes of approving reliability standards . . . and enforcing compliance." *Id*. § 824o(b)(1). That FERC's overarching jurisdiction to enforce compliance with reliability standards encompasses the United States does not necessarily mean that the specific enforcement authority in subsection (e) to assess monetary penalties must also be read to encompass the United States. Rather, "there is a plausible interpretation of the statute that would not authorize money damages against the Government." *Cooper*, 132 S. Ct. at 1448.

That interpretation runs as follows. Under section 215(b)(1), the terms of which incorporate the United States through a statutory cross-reference, Congress generally granted FERC jurisdiction over federal government entities to enforce compliance with reliability standards. Petitioners thus concede, for instance, that federal government entities are subject to FERC's imposition of non-monetary means of enforcement, such as compliance orders or directives, enforcement audits, and the like. *Cf. Lane*, 518 U.S. at 196-97 (noting government concession that statute authorized award of "injunctive relief" against it but finding no waiver of immunity against monetary damages); *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 613, 619 & n.15 (1992) (noting

government concession that statute authorizes "injunctive-type relief" and "coercive sanctions" against it but finding no waiver of immunity against punitive fines). But with respect to section 215(e)'s grant of authority to assess monetary penalties, Congress contemplated the exercise of that power only against non-government entities, not against the United States. Accordingly, section 215(b)(1) pointedly incorporates the United States within the group of "users, owners and operators" encompassed by its general grant of jurisdiction, whereas section 215(e) pointedly does not do so with respect to the "user[s] or owner[s] or operator[s]" encompassed by its conferral of penalty authority. *See Ohio*, 503 U.S. at 615 ("[W]e presume congressional familiarity" with the rule "that any waiver of the National Government's sovereign immunity must be unequivocal."). The upshot is that, while section 215(b)(1) "waives sovereign immunity, it fails to establish unambiguously that the waiver extends to monetary claims" under section 215(e). *Nordic Vill.*, 503 U.S. at 34; *see Fed. Labor Relations Auth.*, 56 F.3d at 276 ("Congress can waive immunity to one type of remedy without waiving immunity to another.").

That understanding of the distinction between section 215(b)(1) and section 215(e) draws additional support from another provision, section 201(f). Under section 201(f), "[n]o provision in this subchapter shall apply to, or be deemed to include," *inter alia*, "the United States . . . unless such provision makes specific reference thereto." 16 U.S.C. § 824(f). "[T]his subchapter" includes section 215; and the sole provision in section 215 that "makes specific reference" to the United States is paragraph (b)(1), not subsection (e). *See* Black's Law Dictionary 1345 (9th ed. 2009) ("provision" is a "clause in a statute"). FERC asserts that section 201(f) has little effect in this case because of section 201(b)(2), which cross-references section 201(f). Section 201(b)(2)

states that, "[n]otwithstanding subsection (f)," i.e., section
201(f), "the provisions" of certain specified "sections,"
including section 215, "shall apply to the entities described in
such provisions, and such entities shall be subject to the
jurisdiction of the Commission."  16 U.S.C. § 824(b)(2).  In
stating that "the provisions" of section 215 "shall apply to the
entities described in such provisions,"  that language
essentially begs the question whether "the entities described
in" section 215(e) include the United States.  At the least, the
language fails to answer the question with requisite clarity to
establish an unequivocal waiver of sovereign immunity where
no waiver otherwise exists.  We are then left with a plausible
interpretation of section 215 under which the general grant of
enforcement jurisdiction in paragraph (b)(1) encompasses the
United States but the specific grant of penalty authority in
subsection (e) does not.

The Supreme Court's decision in *Ohio*, 503 U.S. 607,
supports that understanding of the interplay between the two
provisions.  The Court there addressed a claimed waiver of
the government's sovereign immunity from punitive monetary
fines (i.e., fines for past violations).  The case involved the
citizen-suit and penalty provisions of the Clean Water Act and
Resource Conservation and Recovery Act.  The citizen-suit
provision authorized lawsuits against "any person
(including . . . the United States)" for certain violations of the
Acts, and vested district courts with jurisdiction "to apply any
appropriate civil penalties under [a referenced provision]."
*Id.* at 615-16 (internal quotation marks omitted) (omissions in
original).  The referenced provision concerning civil penalties
encompassed punitive fines, but it provided for penalties
against a "person," which was in turn defined in a separate
provision in a manner excluding the United States.  *Id.* at 616-
18 & n.11.  Although the citizen-suit provision expressly
included the United States within the category of "persons"

13

subject to suit and specifically conferred authority to "apply any appropriate civil [money] penalties," the Court found no unequivocal waiver of sovereign immunity with regard to punitive fines.  *Id.* at 616-18, 628 (analyzing 33 U.S.C. § 1365(a)(1)-(2)).  The Court perceived a material "contrast between drafting that merely redefines 'person' when it occurs within a particular clause or sentence and drafting that expressly alters the definition for any and all purposes of the entire section."  *Id.* at 618.  That is because the statute contained "various provisions specially defining 'person' and doing so expressly for purposes of the entire section in which the term occurs."  *Id.*  "[T]he inference can only be that a special definition not described as being for purposes of the 'section' or 'subchapter' in which it occurs was intended to have the more limited application to its own clause or sentence alone."  *Id.* at 619.  As a result, "the inclusion of the United States as a 'person'" in the citizen-suit provision "must go to the clauses subjecting the United States to suit, but no further."  *Id.*

In *Ohio*, the term "person" was expressly defined to include the United States for purposes of the clauses in the citizen-suit provision subjecting the United States to suit, but that understanding did not carry through to the clause allowing for imposition of appropriate civil penalties, at least with regard to punitive fines.  Here, similarly, the term "users, owners, and operators" expressly includes the United States for purposes of paragraph (b)(1)'s general conferral of jurisdiction, but that understanding does not necessarily carry through to the "user[s] or owner[s] or operator[s]" subject to monetary  penalties under subsection (e)'s grant of penalty authority.  Paragraph (b)(1) "does not purport to apply the more expansive definition" of "users, owners and operators" throughout the section. *Id.* at 619 n.14.  By contrast, terms like "bulk-power system," "transmission organization," and

"regional entity" are defined "[f]or purposes of [section 215]." 16 U.S.C. § 824o(a). And other terms, like "Electric Utility" and "Transmitting Utility," are defined in a manner encompassing the United States "for purposes of" chapter 16 of the U.S. Code. *Id.* § 796(22)(A) (electric utility); *id.* § 796(23) (transmitting utility). Congress thus defined certain terms for purposes of section 215 or the entire Federal Power Act, but did not do so when including the United States within "users, owners and operators" in section 215(b)(1). Under the Court's approach in *Ohio*, there is then a plausible interpretation of section 215 under which the special understanding of "users, owners and operators" inclusive of the United States in paragraph (b)(1) "was intended to have . . . limited application" to that paragraph, "but no further." *Ohio*, 503 U.S. at 619.

FERC relies on the general assumption that identical words within the same statute or section carry a common meaning. *See Brown v. Gardner*, 513 U.S. 115, 118 (1994). The question here, however, is not whether section 215, on balance, is better read to allow imposing monetary relief against the federal government. The question instead is whether there is any plausible interpretation to the contrary. Here, there is. The "natural presumption that identical words used in different parts of the same act are intended to have the same meaning . . . readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed . . . with different intent." *Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007) (first alteration in original) (internal quotation marks omitted). The terms of section 215 suggest "such variation." The reference to "users, owners and operators" in paragraph (b)(1) is followed by "including . . . [the United States]." The references to "user or owner or operator" in subsection (e), by contrast, are not

15

followed by "including . . . [the United States]." It is at least plausible to conclude that Congress had a different intent in those two provisions.

Finally, the intersection between section 316A and section 215(e) fortifies the plausibility of that interpretation. Section 316A, entitled "Enforcement of certain provisions," authorizes FERC to impose civil monetary penalties, up to $1 million per day of violation, on "[a]ny person who violates any provision of subchapter II of this chapter or any provision of any rule or order thereunder." 16 U.S.C. § 825o-1(b). The "provision[s] of subchapter II" and the "rule[s] or order[s] thereunder" include the reliability standards promulgated pursuant to section 215. Section 316A's authorization of monetary penalties, however, is limited to "[a]ny person." *Id.* And "person" in turn is defined for purposes of section 316A (and other provisions) as "an individual or a corporation," but does not include the United States. *Id*. § 796(4). Section 316A thus undisputedly does not authorize imposition of monetary penalties against the United States for violations of reliability standards promulgated under section 215.

FERC maintains that section 215(e) constitutes a more specific penalty provision for violations of reliability standards, such that section 316A has no relevance to this case. But FERC itself has previously looked to section 316A to guide its interpretation of section 215(e)'s penalty authority, concluding that section 316A's cap of $1 million per day applies to penalties imposed under section 215(e) for violations of reliability standards. *See* Rules Concerning Certification of the Electric Reliability Organization, 71 Fed. Reg. 8662, 8711 (Feb. 17, 2006). In any event, section 316A at least raises an ambiguity about whether section 215(e) waives the federal government's sovereign immunity from monetary penalties. Even assuming section 316A does not

apply of its own force to fines for violations of section 215's reliability standards, section 316A at least counsels against construing section 215(e) to authorize monetary awards against the United States. Otherwise, there would be a notable incongruity between two provisions whose plain terms both address monetary penalties for violating section 215's reliability standards—one of which would allow penalties against federal government entities, and the other of which would not. In the face of that sort of incongruity, the requirement to give effect to any plausible construction preserving sovereign immunity is controlling.

\* \* \* \* \*

For the foregoing reasons, we vacate FERC's order and remand for FERC to set aside the monetary penalty imposed on Southwestern. In light of our disposition, we need not consider FERC's challenge to the standing of intervenors Mid-West Electric Consumers Association, Southwestern Power Resources Association, and Southeastern Federal Power Customers Inc., all of which contend that section 215 does not waive the government's sovereign immunity. We "follow the line of precedent in this circuit declining to assess a would-be intervenor's standing when answering the question wouldn't affect the outcome of the case." *Teva Pharm. USA, Inc. v. Sebelius*, 595 F.3d 1303, 1318 (D.C. Cir. 2010).

*So ordered.*