# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 18, 2022          Decided February 17, 2023

No. 21-5238

JAHINNSLERTH OROZCO,
APPELLANT

v.

MERRICK B. GARLAND, ATTORNEY GENERAL OF THE UNITED
STATES, IN HIS OFFICIAL CAPACITY,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-03336)

---

*Karla Gilbride* argued the cause for appellant. With her
on the briefs were *Timothy Elder*, *Albert Elia*, and *Alexandra
Z. Brodsky*.

*Jane M. Lyons*, Assistant U.S. Attorney, argued the cause
for appellee. With her on the brief were *R. Craig Lawrence*
and *April Denise Seabrook*, Assistant U.S. Attorneys.

Before: MILLETT, WALKER, and CHILDS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: Jahinnslerth Orozco, an intelligence analyst at the FBI, wants his employer to use available software that is accessible to blind employees like himself. Both parties agree that Section 794d of the Rehabilitation Act generally requires federal agencies, including the FBI, to use technology that is accessible to employees with disabilities. But the district court dismissed Orozco's action on the ground that the Rehabilitation Act does not give him any right to bring a lawsuit against the FBI to enforce that obligation.

We reverse. The plain text of Section 794d extends a private right of action to all persons with disabilities who file administrative complaints requesting accessible technology and who seek only injunctive and declaratory relief.

**I**

**A**

The Rehabilitation Act of 1973 "'was the first major federal statute designed to provide assistance to the whole population of' individuals with disabilities." *Solomon v. Vilsack*, 763 F.3d 1, 4 (D.C. Cir. 2014) (quoting *Shirey v. Devine*, 670 F.2d 1188, 1193 (D.C. Cir. 1982)). Since its enactment, the Rehabilitation Act has banned disability-based employment discrimination in federal agencies, *see* 29 U.S.C. § 791, and disability-based discrimination in federally funded programs, *see id.* § 794. *See* Rehabilitation Act of 1973, Pub. L. No. 93–112, §§ 501, 504, 87 Stat. 355, 390–394.

In 1986, Congress determined that the federal government could do more to promote the development of accessible technology. Specifically, a Senate Report found that "low cost and no cost modifications" to "standard microcomputer

software programs" could "multiply significantly" the share of individuals with disabilities who would be able to use them. *See* S. REP. NO. 388, 99th Cong., 2d Sess. 21 (1986); *see also* H.R. REP. NO. 955, 99th Cong., 2d Sess. 72 (1986) (Conf. Rep.) (adopting the Senate bill's text). To that end, Congress required agencies to buy technology that employees with disabilities could use without needing special adaptive devices. *See* Rehabilitation Act Amendments of 1986, Pub. L. No. 99–506, § 603, 100 Stat. 1829.

Since then, Congress has progressively strengthened the federal government's role in procuring accessible technology. In 1992, Congress broadened its definition of accessibility by requiring that agencies buy technology that gives users with and without disabilities "comparable" access to "information and data." *See* Rehabilitation Act Amendments of 1992, Pub. L. No. 102–569, § 509, 106 Stat. 4344, 4430.

In 1998, Congress extended that comparable-access mandate to a broader range of activities: "developing, procuring, maintaining, or using" technology. 29 U.S.C. § 794d(a)(1)(A); *see* Workforce Investment Act of 1998, Pub. L. No. 105–220, § 408(b), 112 Stat. 936, 1203–1206. Congress also clarified that the duty to provide comparable access runs to "individuals with disabilities" who are either "Federal employees" or "members of the public seeking information or services." 29 U.S.C. § 794d(a)(1)(A)(i)–(ii).

Congress's 1998 amendment also added the enforcement mechanism at issue in this case, one of several measures meant to "ensure immediate agency compliance with section [794d]." *See* S. REP. NO. 166, 105th Cong., 2d Sess. 35 (1998). Codified at 29 U.S.C. § 794d(f), the enforcement provision lays out a means by which affected individuals can enforce an agency's duty to provide accessible technology.

First, "any individual with a disability" may file an internal administrative complaint with the relevant agency. 29 U.S.C. § 794d(f)(1)(A). If such a complaint is filed, Congress requires the agency to address it using its procedures for discrimination in federally funded programs, *see id.* § 794, rather than its procedures for employment discrimination. *Id.* § 794d(f)(2).

Second, through a series of statutory cross-references, Congress vested "any individual" who files an internal administrative complaint about inaccessible technology, 29 U.S.C. § 794d(f)(3), with those remedies and rights "set forth" in 29 U.S.C. § 794a(a)(2). Section 794a(a)(2), in turn, makes the "remedies, procedures, and rights" contained in Title VI of the Civil Rights Act of 1964 available to persons "aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance[.]" *Id.* § 794a(a)(2); *see also Barnes v. Gorman*, 536 U.S. 181, 185 (2002).

Put simply:

1. Title VI creates a cause of action to challenge race, color, or national origin discrimination in federally funded programs.

2. Section 794a(a)(2) of the Rehabilitation Act extends the same cause of action that Title VI provides to persons aggrieved by disability discrimination in federally funded programs.

3. Section 794d(f)(3) then extends that same cause of action to anyone who has filed an administrative complaint about inaccessible technology under Section 794d.

5

**B**

Jahinnslerth Orozco joined the FBI as an intelligence analyst in 2012. Because he is blind, Orozco relies on screen access software that "converts visual screen information into synthesized speech or into braille" to perform his job. Compl. ¶ 2, J.A. 8.[1]

Such screen access tools, though, can be foiled by poor software design. For example, if a website includes an arrow button, its function might be obvious to a sighted user but difficult for screen access software to navigate without an alternative text description. *See Leiterman v. Johnson*, 60 F. Supp. 3d 166, 170 (D.D.C. 2014) (For screen access software "to successfully 'read' computer screens, the information on the screen must be coded so it is accessible to screen readers."). Orozco alleges that much of the software used daily by FBI analysts suffers from similar problems, rendering it unusable for blind employees. Compl. ¶ 2, J.A. 7–8.

In April 2019, Orozco filed a complaint with the Assistant Attorney General for Administration at the Department of Justice, which oversees the FBI, alleging that the FBI had failed to deploy accessible technology in his workplace. The Assistant Attorney General for Administration generally handles complaints about discrimination in programs funded by the Department of Justice, and therefore is responsible for handling complaints about inaccessible technology. *See* 28 C.F.R. §§ 39.170(d)(4), 42.2(a); 29 U.S.C. § 794d(f)(2). To be

---

[1] Because this case arises from a ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we take as true the facts from Orozco's first amended complaint and "matters of which we may take judicial notice," and we "construe the facts, and reasonable inferences drawn from them, in the light most favorable" to Orozco. *Singletary v. Howard Univ.*, 939 F.3d 287, 293 n.1 (D.C. Cir. 2019).

on the safe side, Orozco sent copies of his administrative complaint to both the FBI's Equal Employment Opportunity Office, which handles employment discrimination complaints, and the FBI's Chief Information Officer, which is responsible for procuring accessible technology. Orozco's filing expressly reminded the FBI that it should handle his complaint using its procedures governing discrimination in federally funded programs. Compl. Letter 1–2, J.A. 29–30.

The FBI nonetheless routed Orozco's complaint through its employee-discrimination process. *See* Letter from Arlene A. Gaylord to Timothy R. Elder (May 9, 2019), J.A. 33–35 (invoking 29 C.F.R. Part 1614's employment discrimination procedures). Orozco once again filed his complaint with the Office of the Chief Information Officer, but he never received any response from that Office. Instead, the FBI's Equal Employment Opportunity Office dismissed the complaint "for failure to state a claim of [employment] discrimination[.]" Letter from Richard Toscano to Timothy R. Elder (Aug. 7, 2019), J.A. 20. In the same letter, the FBI advised Orozco to contact the Office of the Chief Information Officer—which he had already done twice. *Id.*; *see also* Decl. Albert Elia Supp. Pl.'s Mem. Opp'n Def.'s Mot. Dismiss ¶¶ 6, 10–13, J.A. 26–27.

Three months after his administrative complaint was dismissed, and having received no further communications from the FBI, Orozco filed suit in the United States District Court for the District of Columbia. His complaint reasserted the same violations of Section 794d(a) as his administrative filings, and it sought declaratory and injunctive relief against the Attorney General, who oversees the FBI. *See* Compl. ¶¶ (a)–(h), J.A. 15–16.

The district court granted the FBI's motion to dismiss. While recognizing "the challenges Mr. Orozco faces at his workplace," the district court held that Section 794d(f)(3) "does not provide a cause of action" because it incorporates only the right to sue a "federal provider of * * * assistance" created by Section 794a(a)(2), and the FBI is not a federal provider of assistance when acting as an employer. *Orozco v. Garland*, No. 19–3336, 2021 WL 4502072, at *4–6 (D.D.C. Oct. 1, 2021). In a footnote, the district court declined to pass on the government's separate argument that Orozco had failed to exhaust his administrative remedies. *Id.* at *6 n.3.

Orozco timely appealed.

## II

We have jurisdiction under 28 U.S.C. § 1291. We review *de novo* the district court's dismissal of the case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Webster v. Del Toro*, 49 F.4th 562, 565 (D.C. Cir. 2022). We also review *de novo* the district court's interpretation of the Rehabilitation Act. *United States v. Palmer*, 35 F.4th 841, 848 (D.C. Cir. 2022).

## III

Section 794d(f)(3)—the accessible technology provision at issue here—says that "any individual with a disability filing a complaint" shall have the "remedies, procedures, and rights" laid out in Section 794a(a)(2)—a provision addressing discrimination in the administration of federal financial assistance. 29 U.S.C. § 794d(f)(3). The district court ruled that the only right created in Section 794a(a)(2) is the right to sue a "federal provider of * * * assistance," and not the right to sue a federal employer. That is because the Supreme Court has

interpreted the phrase "federal provider of assistance" to mean "federal funding agencies acting as such." *Lane v. Peña*, 518 U.S. 187, 193 (1996). As Orozco concedes, *see* Orozco Opening Br. 36–37, federal agencies generally do not provide "financial assistance" to anyone when they procure technology for their employees. *See Taylor v. Small*, 350 F.3d 1286, 1291 (D.C. Cir. 2003).

So the question in this case is whether Section 794d(f)(3)'s incorporation of the "remedies, procedures, and rights" created in Section 794a(a)(2) also brings with it the latter Section's separate limitations on who can sue—that is, only recipients of federal financial assistance and not employees.

We hold that Section 794(d)(3) does not bring in those additional restrictions. Section 794d's plain language, settled canons of statutory construction, and precedent establish that an incorporation of remedies, procedures, and rights means what it says—it brings forward only those remedial provisions, and no more.

## A

We start, as we must, with "the language of the statute itself." *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1056 (2019) (quotation omitted). Section 794d(f)(3) adopts the "remedies, procedures, and rights set forth in section[] 794a(a)(2)." 29 U.S.C. § 794d(f)(3). The provision then expressly defines to whom those remedies, procedures, and rights "shall be * * * available": "any individual with a disability filing a complaint under [section 794d(f)(1)]." *Id.*

Section 794a(a)(2), in turn, incorporates a set of remedies and rights found elsewhere—specifically, in "title VI of the Civil Rights Act of 1964[.]" 29 U.S.C. § 794a(a)(2). And

Section 794a(a)(2) likewise separately defines to whom those rights are available for purposes of Section 794a: "any person aggrieved by * * * any recipient of Federal assistance or Federal provider of such assistance[.]"

So while both Sections 794d and 794a adopt the same enforcement remedies, rights, and procedures, they each independently define who may invoke those provisions to enforce the duties that each Section independently imposes.

The Supreme Court has ruled that the Rehabilitation Act gives full effect to that careful distinction between incorporated remedies and limitations on who may exercise those remedies. In *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624 (1984), the question before the Court was whether Section 794a(a)(2)'s cross-reference to Title VI's remedies, procedures, and rights also brought with it Title VI's restrictions on who could sue under that statute. (Title VI prohibits employment discrimination suits against federally funded entities unless the federal funding had boosting employment as its "primary objective," *see* 42 U.S.C. § 2000d–3.) The Supreme Court held that, while Section 794a(a)(2) expressly incorporated Title VI's rights, remedies, and procedures—including its cause of action—Section 794a(a)(2) did not carry forward Title VI's separate definition of who could sue under that cause of action. Instead, Section 794a(a)(2)'s own definition of who is an authorized plaintiff governs. *Darrone*, 465 U.S. at 635.

So too here. We take Congress at its word that, when it incorporated the "remedies, procedures, and rights" set forth in another part of the Rehabilitation Act, it did that and no more. It created a cause of action to enforce the technology-accessibility requirements of Section 794d. If Congress had meant also to incorporate Section 794a's limits on who may sue, Congress would have said so. It did not, so Section

794d(f)(3)'s own definition of qualifying plaintiffs—any individual with a disability who has filed a complaint about technology accessibility—controls, permitting Orozco to file suit.

That common-sense conclusion gives the most natural meaning to each of the words Congress used in Section 794d(f)(3). Section 794d(f)(3) says that the "remedies, procedures, and rights" in Section 794a(a)(2) shall be "*available* to *any* individual with a disability filing" an administrative complaint. 29 U.S.C. § 794d(f)(3) (emphasis added). Orozco certainly counts as "any individual with a disability," and as an employee, he is one of the statutorily specified individuals who can file the requisite administrative complaint about technology accessibility in the workplace. *Id.* §§ 794d(a)(1)(A)(i), (f)(1)(A). To hold that Section 794a(a)(2)'s incorporated cause of action takes away what Section 794d(f)(3)'s plain text expressly grants would be to put the statute at war with itself.

In fact, the district court's reading would appear to leave no one capable of using the rights, remedies, and procedures that Section 794d(f)(3) goes to all the trouble of adopting. As *Lane* held, a federal agency like the FBI generally is not acting as a "'Federal provider' of financial assistance" within the meaning of the Rehabilitation Act when it manages its own employees or other internal affairs. 518 U.S. at 195. Yet Section 794d is directed exclusively at these kinds of inward-facing activities: "developing, procuring, maintaining, or using" accessible technology within the agency. *See* 29 U.S.C. § 794d(a); *see also* 28 C.F.R. § 41.3(e) (Department of Justice definition of "Federal financial assistance" excluding "procurement contract[s]").

So agencies would seem to be incapable of violating Section 794d while acting in their external grantmaking and financial-assistance-giving capacities—the only capacities for which the district court's reading would allow suit. Tellingly, at oral argument, counsel for the government conceded that its reading of Section 794d(f)(3) does not leave any class of plaintiffs with a "clear" right to sue. Oral Arg. Tr. 27:14–29:2. We agree. Reading a statute expressly authorizing "civil actions" to authorize no civil actions would be to render that provision a nullity. Workforce Investment Act of 1998 § 408(b), 112 Stat. at 1206; *see generally Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1939 (2022) ("[W]e must normally seek to construe Congress's work 'so that effect is given to all provisions, so that no part will be inoperative or superfluous, void or insignificant.'") (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).

**B**

Section 794d's structure confirms that Congress extended the remedies of Title VI to "any" person with a disability, including an employee, who files an administrative complaint about inaccessible technology. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) (Courts have a "duty to interpret Congress's statutes as a harmonious whole[.]").

In *Darrone*, the Supreme Court relied in part on structural principles to hold that Section 794a(a)(2)'s cross-reference to the "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964" did not also bring with it Title VI's "primary objective" limitation on employment discrimination suits, 42 U.S.C. § 2000d–3. *See* 465 U.S. at 633–635. *Darrone* emphasized that, unlike Title VI, the Rehabilitation Act's substantive protections placed no such limitation on funding agencies' duty to prevent employment discrimination. *See id.*

at 632–633 (citing 29 U.S.C. § 794(a)). Further, the Court found no indication in the "legislative history, executive interpretation, [or] purpose" of the statute that any such limitation was intended. *Id.* at 633.

Likewise here. The substantive protections of Section 794d apply equally to federal employees and to "members of the public seeking information or services[.]" 29 U.S.C. § 794d(a)(1)(A). And all members of both groups are equally entitled to submit administrative complaints. *Id.* § 794d(f)(1)–(2). Nothing in the substantive or remedial provisions of Section 794d hints that Congress meant to confine its enforcement rights to members of the public seeking assistance, while deliberately withholding any such remedy from employees—especially when that might leave nobody able to sue. Nor does any "legislative history, executive interpretation, [or] purpose" support the district court's reading. *Cf. Darrone*, 465 U.S. at 633.[2]

In fact, the contemporaneous Executive Branch interpretation of Section 794d was exactly the opposite of the government's current position. In 1999, just after Section 794d(f)(3) was enacted, the Attorney General interpreted Section 794d(f) to authorize "private lawsuits by employees and members of the public." Department of Justice, *Information Regarding Section 508 of the Rehabilitation Act* at 2 (April 2, 1999), https://www.justice.gov/sites/default/files/crt/legacy/2009/02/18/oldinfo.pdf (last accessed Feb. 8, 2023); *see also* Department of Justice, *Executive Summary*, in *Information Technology and People With Disabilities: The*

---

[2] Section 794d creates exceptions for users of "national security systems," *see* 29 U.S.C. § 794d(a)(5), and for situations where procuring accessible technology would pose an "undue burden," *id.* § 794d(a)(1)(A), but the government has not argued that either exception applies here.

*Current State of Federal Accessibility* at 11-2 (April 2000) ("Members of the public *and employees with disabilities * * * may * * * file* private lawsuits in Federal district court.") (emphasis added).

The government attaches significance to Congress's decision not to incorporate the remedies of Section 794a(a)(1), which addresses employment discrimination lawsuits by federal employees. *See* Gov't Br. 15.

But that makes perfect sense. Remember, Congress specifically forbade agencies from treating administrative complaints about inaccessible technology as if they were about employment discrimination rather than about the failure to ensure federal funds are used in a non-discriminatory manner. 29 U.S.C. § 794d(f)(2). Given that, Congress understandably eschewed a cause of action crafted to deal with employment discrimination.

Nor does a violation of Section 794d resemble employment discrimination in any relevant respect. Congress's purpose was to spur the innovative use of accessible technology by federal agencies. So an agency can violate Section 794d by failing to use available accessible technology, regardless of whether, for example, that omission was tied to an individual "adverse personnel decision or other term or condition of employment[,]" as it would have to be to state a claim of employment discrimination, *see, e.g.*, *Marshall v. Federal Express Corp.*, 130 F.3d 1095, 1099 (D.C. Cir. 1997).

Anyhow, the government's reading cannot rest on some perceived desire to cut out only federal employees from enforcement efforts, since its reading leaves *no one* capable of suing, employee or otherwise.

14

## C

The government separately argues that we should read Section 794d to foreclose employee (or apparently any other) lawsuits because we must construe "any ambiguity" in Section 794d "against a waiver of sovereign immunity." *Southwestern Power Admin. v. FERC*, 763 F.3d 27, 32 (D.C. Cir. 2014); *see* Gov't Br. 24.

That canon of statutory construction is of no help here. To start, there is no relevant ambiguity because the plain text of Section 794d forecloses the government's preferred reading. Beyond that, Congress already "waive[d] the Government's immunity from actions seeking relief 'other than money damages'" in Section 702 of the Administrative Procedure Act. *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260–261 (1999). That waiver, we have "repeatedly" held, "applies to any suit whether under the APA or not." *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017) (quoting *Trudeau v. Federal Trade Comm'n*, 456 F.3d 178, 186 (D.C. Cir. 2006)); *see also* Gov't Br. at 43 n.17, *Lane v. Peña*, 518 U.S. 187 (1996) (No. 95–365), 1996 WL 115795, at *27 n.17 (recognizing that Section 702 waived sovereign immunity for Lane's non-monetary declaratory and injunctive relief). Nor, for the reasons canvassed above, does Section 794d contain any explicit "limitation on suit[]" that would limit Section 702's reach. *Cf. Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215–216 (2012).

\* \* \* \* \*

To sum up, the plain text and structure of 29 U.S.C. § 794d(f)(3) grant Orozco the right to use the "remedies, procedures, and rights" of Title VI to assert his claim for

accessible technology. Neither sovereign immunity nor any other structural or textual feature confines Section 794d(f)(3)'s cause of action to plaintiffs aggrieved by federal providers of assistance—which under this statutory provision governing internal agency administration would seem to be no one. The government should have stuck with its original reading of Section 794d(f)(3): The statute affords federal employees like Orozco their day in court.

**IV**

Lastly, the parties disagree whether Orozco—having already filed his complaint once with the Justice Department's Assistant Attorney General for Administration, and twice with the FBI's Office of the Chief Information Officer, and having received a response from neither—was required to do still more to exhaust his administrative remedies before filing suit. *Compare* Orozco Reply Br. 3 n.1 *with* Gov't Br. 12 n.6; *see generally Doak v. Johnson*, 798 F.3d 1096, 1103–1104 (D.C. Cir. 2015); *Bartlett v. IRS*, 749 F.3d 1, 8 & n.28 (1st Cir. 2014).

We need not decide that issue because it does not affect our or the district court's jurisdiction over this case. Section 794d(f)(3) gives a cause of action to persons "filing a complaint under paragraph [794d(f)(1)]." Orozco did file such a complaint—twice. *See* Compl. Letter, J.A. 21; Decl. Albert Elia Supp. Pl.'s Mem. Opp'n Def.'s Mot. Dismiss ¶¶ 6, 10–13 J.A. 26–27. That is enough to establish jurisdiction. *See Doak*, 798 F.3d at 1104.

Because any remaining exhaustion issues are non-jurisdictional, we remand them to the district court to be addressed in the first instance.

16

**V**

Congress amended 29 U.S.C. § 794d to make sure that agencies would fulfill their responsibility to procure technology that allows employees with disabilities to participate fully in the workplace. To enforce that duty, Congress expressly provided a private right of action to any individual with a disability, including a federal employee, who first files an administrative complaint about inaccessible technology—a group of which Orozco is undoubtedly a member.

For that reason, we reverse the decision of the district court and remand for further proceedings consistent with this opinion.

*So ordered.*