# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 24-5125**

KATHERINE J. MERA,
> APPELLANT

v.

PAMELA BONDI,
> APPELLEE

**September Term, 2024**

FILED ON: MAY 16, 2025

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-02127)

---

Before: PILLARD and WILKINS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

## <u>J U D G M E N T</u>

This case was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of the parties. The Court has afforded the issues full consideration and determined they do not warrant a published opinion. *See* FED. R. APP. P. 36; D.C. CIR. R. 36(d). It is

**ORDERED** and **ADJUDGED** that the judgment of the United States District Court for the District of Columbia be **AFFIRMED**.

\* \* \*

Katherine Mera was employed by the Department of Justice ("DOJ") from 1997 until she was fired in March 2020. A neutral decisionmaker within the Department found that Mera failed to perform most of the tasks in her Performance Improvement Plan ("PIP"). Mera sued, alleging in part that her termination was retaliation for protected activity. A second count alleged substantive disability discrimination. The District Court granted summary judgment to the government on both claims. We affirm.

## I.

### A.

Mera began working in DOJ's Office on Violence Against Women ("the Office") in 2001. She suffers from post-traumatic stress disorder and anxiety, and since December 2017, the Department of Veterans Affairs has considered her 100% disabled. In June 2018, Mera settled an Equal Employment Opportunity ("EEO") complaint against her employer concerning disability accommodations. That negotiated agreement included a reduced suspension for Mera's misuse of a government credit card, as well as the Department's commitment to providing specific accommodations. In August, Mera claimed that her immediate supervisor, Darlene Johnson, imposed requirements that violated the scope and spirit of the accommodations agreement. This post-mediation follow-on dispute was resolved in October 2018 through a revised accommodation record.

One month later, Johnson and Mera met for Mera's mid-year evaluation. Both parties agree that this meeting occurred months after mid-year reviews typically were conducted. In the government's view, Johnson was delayed because the Office first needed to decide how to resolve Mera's credit card misuse. Mera claims that the government's justification "makes no sense as it mixes performance with possible misconduct issues." J.A. 734. Either way, the parties agree that in November 2018, Johnson told Mera that she was underperforming.

Between that mid-term evaluation and her next annual review, Mera claims that she was subjected to various "oppressive, harassing[,] and abusive conduct" from Johnson and Nadine Neufville, her second-level supervisor. Appellant's Br. 10. Then, in May 2019, Johnson gave Mera her 2018 yearly evaluation, issuing Mera's first-ever "Unacceptable" rating, which Johnson said spanned all three of the Office's critical elements—Communication and Customer Service, Accountability for Organizational Results, and Fiscal Responsibility/Taxpayer Value. Mera was placed on a sixty-day PIP and ordered to complete thirteen tasks across the critical elements. After the PIP period ended, Johnson concluded that Mera failed eight of the assigned tasks and recommended that DOJ terminate Mera's employment.

The Office then selected Mary Powers to serve as the neutral decisionmaker. Powers, the Office's Deputy Director for Policy, Outreach, and Communications, sat outside of Mera's chain of command. Upon her independent review, Powers determined that Mera failed seven of thirteen required tasks under the PIP. Powers sustained Johnson's proposal and removed Mera on March 25, 2020.

### B.

In August 2020, Mera filed this lawsuit in the District Court, raising three claims: (1) discrimination based on race and national origin under Title VII and/or disability under the Rehabilitation Act; (2) retaliation under the same statutes; and (3) a "mixed case appeal" under the Civil Service Reform Act ("CSRA"). She later withdrew her allegations of race and national origin discrimination, leaving only her disability discrimination, retaliation, and "mixed case appeal"

2

claims. The District Court construed Mera's retaliation claim to cover two distinct adverse actions. First, that the entire "pre-removal conduct, taken together," created a retaliatory "hostile work environment." *Mera v. Garland*, No. 20-cv-2127 (BAH), 2024 WL 1253856, at *10 (D.D.C. Mar. 25, 2024) (internal quotation marks omitted). And second, that Mera's termination was a separate retaliatory act. The District Court granted summary judgment to the government on all claims.

Mera now appeals. We have jurisdiction under 28 U.S.C. § 1291 and review the District Court's grant of summary judgment *de novo*. *Ali v. Regan*, 111 F.4th 1264, 1273 (D.C. Cir. 2024). "We view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.* (internal quotation marks omitted). "Summary judgment may be granted only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(a)).

## II.

We only consider Mera's Rehabilitation Act retaliation and discrimination claims. She did not seek review of the District Court's grant of summary judgment on the CSRA "mixed appeal" issue. Because Mera has not identified any factual disputes that would allow a reasonable jury to conclude that the Office retaliated or discriminated against her, we affirm.

### A.

The "basic tenet" of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, "is that the Government must take reasonable affirmative steps to accommodate . . . [people with disabilities], except where undue hardship would result." *Ali*, 111 F.4th at 1268 (internal quotation marks omitted). The Act bans "disability-based employment discrimination in federal agencies and disability-based discrimination in federally funded programs." *Orozco v. Garland*, 60 F.4th 684, 685–86 (D.C. Cir. 2023) (citation omitted). The Rehabilitation Act incorporates the "same standards as the Americans with Disabilities Act ('ADA')," *Menoken v. Dhillon*, 975 F.3d 1, 4 (D.C. Cir. 2020), including a prohibition on "retaliation against an individual for making a charge under or opposing any practice made unlawful by that Act," *Kersey v. WMATA*, 586 F.3d 13, 16 (D.C. Cir. 2009). A plaintiff bringing a Rehabilitation Act claim must prove the following: (1) she is disabled, (2) her employer had notice of the disability, (3) she was able to perform the essential functions of her job with or without reasonable accommodation, and (4) her employer denied her request for reasonable accommodations. *Ali*, 111 F.4th at 1268–69; *Solomon v. Vilsack*, 763 F.3d 1, 9 (D.C. Cir. 2014).

On Mera's retaliation claim, we review only the grant of summary judgment concerning Mera's termination, not the District Court's ruling on the hostile work environment allegations. Mera forfeited the latter argument by failing to argue in her opening brief that the Office created a hostile work environment in response to her protected activity, and she does not cite authority that could support such a claim on these facts.[1]

---

[1] Instead, Mera frames the argument to address only her *termination*—that is, the District Court's error in finding "no evidence that [she] was terminated because of her protected activity." Appellant's Br. 31. Nor does she cite the portion of the District Court's opinion addressing the hostile work environment issue. And, she does not argue in her opening brief that the "course of retaliation," *id.* at 32, constituted a series of actions that were adverse in their own

Although Mera established a *prima facie* case of retaliation, her employer asserted a legitimate, nonretaliatory reason for the termination, meaning the "presumptions and burdens" from the *McDonnell Douglas* framework "disappear[]" and the "sole remaining issue" is whether the adverse action was retaliation or not. *Kersey*, 586 F.3d at 16–17 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000); citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). We thus ask at summary judgment whether "a reasonable jury could conclude from all of the evidence that" Mera's termination "was made for a . . . retaliatory reason." *Id.* at 17 (alteration omitted). We initially presume that an employer's facially legitimate, nonretaliatory reasons are genuine, *Durant v. D.C. Gov't*, 875 F.3d 685, 700 (D.C. Cir. 2017), subject to the employee identifying a dispute of material fact.

Mera failed to do so. She identifies no evidence from which a reasonable jury could conclude that the grounds the Office proffered in discharging her were not its true reasons, but instead a pretext for retaliation. *See Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008). She advances only two reasons why a jury could find in her favor—one that the temporal proximity between her protected activity and removal supports an inference of retaliation, and the other that her employer's nonretaliatory reason (underperformance) was false and thus pretextual. Neither has merit.

First, Mera's temporal proximity argument misunderstands what evidence is required at this juncture in the litigation. Pointing to the one-month timeframe between her protected EEO activity and her negative midterm review in November 2018, which was followed by her May 2019 "Unacceptable" performance appraisal and ultimate termination in March 2020, she asserts that a jury could infer retaliation. Proximity may establish a *prima facie* case of retaliation, but to survive summary judgment in the face of an employer's evidence of nonretaliatory grounds, a plaintiff ordinarily must identify "positive evidence beyond mere proximity" to dispute the employer's motives. *Minter v. District of Columbia*, 809 F.3d 66, 71–72 (D.C. Cir. 2015). Mera also suggests that the irregular timing of her performance reviews could permit a jury to find that her termination was retaliatory. Yet she fails to meaningfully contest record evidence that her employer postponed performance reviews to first resolve the disciplinary consequences of her credit card misuse, a presumptively valid nonretaliatory reason for the evaluation timeline.

Second, Mera's primary argument—that the Office mischaracterized her performance as noncompliant with the terms of her PIP—is equally unavailing. Just as "an employer's reason need not be false in order to be pretextual," conflicting evidence bearing on the "objective validity" of the employer's reasons "will not always be sufficient to demonstrate pretext." *George v. Leavitt*, 407 F.3d 405, 414–15 (D.C. Cir. 2005); *see also Walker v. Johnson*, 798 F.3d 1085, 1093–94 (D.C. Cir. 2015) ("Such fine descriptive differences between materially consistent accounts, without more, do not tend to make the accounts unworthy of belief, let alone support an inference of discrimination or retaliation."). Rather, where (as here) the record reflects a facially legitimate reason for the employer's action, the employee must identify a genuine dispute over whether the

---

right or became actionable when considered together. *See Menoken*, 975 F.3d at 5–7. Although on reply Mera characterizes Johnson's conduct from October 2018 until May 2019 as cognizable under a retaliation theory, that argument comes too late and we decline to consider it. *See Cruz v. Am. Airlines, Inc.*, 356 F.3d 320, 333–34 (D.C. Cir. 2004).

deciding officer "honestly and reasonably believed in those reasons." *George*, 407 F.3d at 415; *see also Walker*, 798 F.3d at 1093 ("The evidence . . . must be such that a reasonable jury could not only disbelieve the employer's reasons, but conclude that the real reason . . . was a prohibited one.").

Mera's efforts to identify such a dispute fall short. Instead of contesting Powers's motivations directly, Mera contends that she performed well enough to avoid failing her PIP. For example, the PIP required that Mera "generate accurate Redbooks, a type of [grant] award document." *Mera*, 2024 WL 1253856, at *18. Any Redbook with more than three errors would mean Mera failed the required task. Powers determined that Mera's reviewers sent back four Redbooks, "at least one of which contained more than three errors, and eight [of which] were returned between two and five times due to multiple errors and omissions, including inaccuracies in the project description and incorrect address, salutation, special condition, award amount, or award type." J.A. 603. Mera counters that the Office's manual was out of date and that she received inadequate training. She also concedes that she made errors, but characterizes them as "small" or "styl[istic] conflict[s]." J.A. 864 ¶ 15. The PIP, however, draws no such distinction.

The performance plan also required Mera to complete a "thorough" analysis of Fiscal Year 2019 budgets without "programmatic discrepancies." J.A. 608. Failure to conduct such an analysis, or any budget containing more than three analytical errors, would be cause for an "Unacceptable" rating. Upon independent review, Powers determined there were "seven significant changes and edits needed on [Mera's] budgets that required further calls with the grantees," and most of the errors involved "general questions that a seasoned program specialist should have known to ask." J.A. 669. Powers further identified multiple problems with computations and resource allocations. Mera does not dispute Powers's finding, but instead insists that she followed protocol when reviewing the assigned budgets.

In short, Mera fails to rebut the facts underlying the termination decision or raise the specter that any bias from Johnson or Neufville could be imputed to Powers. *See Walker*, 798 F.3d at 1095. To be sure, Mera could show pretext indirectly by demonstrating that "the employer's proffered explanation is unworthy of credence." *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (internal quotation marks omitted). But Mera has not made that showing here, because in most instances, her descriptions of and excuses for her own work under the PIP do not dispute Powers's findings or analysis. Mera's testimony is not evidence that would allow a reasonable jury to find that Powers's decision was retaliatory and not based on an honest and reasonable belief that Mera failed to comply with the PIP. Powers's "stated belief about the underlying facts is reasonable in light of the evidence," making this the "ordinar[]y" case in which there is "no basis for permitting a jury to conclude that . . . [Powers] is lying about the underlying facts." *Brady*, 520 F.3d at 495.

## B.

Mera's substantive discrimination claim fares no better. We agree with the District Court that the "contours" of Mera's discrimination argument are "unclear." *Mera*, 2024 WL 1253856, at *20. Under the theory she advances here, the government is entitled to summary judgment.

5

To start, Mera failed to raise a substantive discrimination claim on appeal. In the argument section of her opening brief, Mera mentions disability discrimination only in passing. She first defines the term in the context of her retaliation argument. Appellant's Br. 34–35. Then, she states in conclusory fashion that a jury could find disability discrimination and retaliation, *id.* at 40, but instead of articulating a discrimination claim, she continues to assert "there are multiple issues of material fact, which . . . could lead a jury to reasonably find she was *terminated* because of her *protected activity*," *id.* at 41 (emphasis added)—*i.e.*, she was subjected to retaliation. Mera goes on to detail what she believes are issues of fact for a jury, *id.* at 41–46, after which she concludes that a jury "could reasonably find Johnson" falsely alleged subpar work "as a pretext to conceal a discriminatory and/or retaliatory intent," *id.* at 46. Mera thus forfeits the argument because she never explains how or why (1) Powers's termination decision or (2) Johnson's series of actions between October 2018 until May 2019 were based on her *disability* as opposed to her *protected activity*. *See Ramos v. Garland*, 77 F.4th 932, 940–41 (D.C. Cir. 2023).[2]

In any event, Mera's discrimination argument, generously construed, fails on the merits. The best she does in her opening brief is to imply a discrimination claim that mirrors her retaliation one. Full consideration of this otherwise forfeited argument would require rejecting it for the same reasons we affirm the District Court's summary judgment grant on the retaliation claim. *See supra* Section II.A; *Oviedo v. WMATA*, 948 F.3d 386, 399 & n.10 (D.C. Cir. 2020) ("Because Oviedo's discrimination and retaliation claims are both analyzed under the same inquiry, they fail for the same reasons." (citing *Allen v. Johnson*, 795 F.3d 34, 40 (D.C. Cir. 2015)).

\*　　\*　　\*

For the foregoing reasons, we affirm the District Court. Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

**Per Curiam**

FOR THE COURT:
Clifton B. Cislak, Clerk

BY:　　/s/
Daniel J. Reidy
Deputy Clerk

---

[2] Like in the retaliation context, Mera takes a different approach in her reply brief, contending for the first time that she can show disability discrimination by pointing to a series of acts that, culled together, suggest discriminatory intent. *See* Appellant's Reply Br. 3–4, 7, 16. Because she did not argue in her opening brief that her termination was "due to" her disability, it is forfeited. *Cruz*, 356 F.3d at 333. To the extent "we may discern a hint of such an argument after a close reading of [her] reply brief (albeit not a hint supported by both citations to authority and argument, as is required by Federal Rule of Appellate Procedure 28(a)(9)), [Mera] was required to present, argue, and support [her disability discrimination] claim in [her] opening brief for us to consider it." *Id.*